GOLD, MARC H., Associate Judge.
This case involves consolidated appeals from a judgment on claims and counter *330 claims arising from the acquisition and development of real estate. As the style of the case reflects, there are multiple parties, who have raised a number of issues. We reverse in part and remand the case to the trial court for a new trial on the issue of lost commissions, and the amount of damages for the fill and settlement fees.
Michigan National Bank (MNB), Ibis Real Estate Sales Corp., and Ibis of West Palm Beach, Inc., sued in a multi-count complaint, alleging damages from fill diverted from the property, lost real estate commissions, and unpaid settlement fees. The trial court granted a partial summary judgment in favor of MNB on liability, finding Ibis Landing liable for the value of removed fill and settlement expenses. The damage amounts were left for trial. Sandhill Venture counterclaimed for declaratory relief, damages, and to quiet title to a parcel of real property.
The non-jury trial resulted in an adverse judgment for MNB on the real estate commissions, and the dismissal of MNB’s claims for real estate commissions and settlement expenses against Ecclestone, individually. However, MNB did recover damages on its claims for the diverted fill and settlement expenses. In a separate non-jury trial, the court entered final judgment in favor of MNB and against Sandhill Venture on its counterclaim.
MNB appeals the adverse judgment on its claim for recovery of real estate commissions and the involuntary dismissal of its claims against Ecclestone, individually. Sandhill Venture appeals the adverse judgment on its counterclaim. Ibis Landing did not appeal the partial summary judgment or the final judgment assessing damages in favor of MNB on the fill and settlement expenses.
Background
The bench trial in this matter commenced on March 25, 2002. The first four days of trial concluded on a Thursday and it was scheduled to resume the following Monday. On Sunday evening, counsel for MNB contacted defense counsel, stating that he could not continue.
The following morning, another member of the firm, who had little involvement in the case, appeared before the trial court and stated that trial counsel had been to his doctor twice over the weekend, and that the doctor had ordered bed rest for exhaustion. She represented that trial counsel had not slept for days and was receiving medication. The court expressed its opinion that another member of the firm could be ready almost overnight, stating that anybody can get ready for a case practically overnight. The court then recessed until after lunch to allow MNB to obtain a doctor’s note.
After lunch, a doctor’s note was presented which stated that trial counsel was being treated for severe stress, exhaustion, insomnia, and recommended further evaluation and bed rest for two weeks. Indicating that no other attorney in the firm was even minimally prepared to step in and try the case, the attorney requested a two-week continuance.
Defendants’ counsel objected, arguing that it would be prejudiced because a delay would allow MNB an opportunity to reshape their case and would increase costs associated with the delay and additional preparation.
Denying the motion for a two-week continuance, the trial court reiterated that it could not envision a case that could not be prepared in a day or two.
Two days later, the same attorney who had asked for the continuance appeared in court to try the case. She noted that she *331 had 40 hours to prepare, that she did not have a complete transcript of the prior trial proceedings, and that the original trial counsel was ill and had been unable to help her prepare for the trial, in which more than 30 depositions had been taken.
Her requests for a continuance were denied except as to the Sandpiper Cove Counterclaim.
Analysis
A trial court’s decision whether to continue a case is subject to an abuse of discretion review. See SSJ Mercy Health Sys., Inc. v. Posey, 756 So.2d 177, 179 (Fla. 4th DCA 2000).
In considering whether the trial court abused its discretion in denying a motion for continuance, the factors to be considered include whether the denial of the continuance creates an injustice for the movant, whether the cause of the request was unforeseeable by the movant and not the result of dilatory conduct, and whether the opposing party would suffer any prejudice or inconvenience as a result of the continuance. Fleming v. Fleming, 710 So.2d 601, 603 (Fla. 4th DCA 1998).
From the record, it appears clear that the original trial counsel could not continue his representation of MNB. See Fla. Fruit & Vegetable Ass’ n v. Wells, 755 So.2d 828, 829 (Fla. 5th DCA 2000); Silverman v. Millner, 514 So.2d 77, 79 (Fla. 3d DCA 1987); Thompson v. Gen. Motors Corp., 439 So.2d 1012, 1013 (Fla. 2d DCA 1983).
There was no basis to conclude that his illness was foreseeable or the result of dilatory practices. Further, this court finds no basis to conclude that there would be any material prejudice or inconvenience to the defense due to the continuance. It is worth noting that this was a non-jury trial that was the culmination of approximately six years of litigation, involving numerous plaintiffs and defendants, as well as extensive discovery.
The remaining issue is whether less than 48 hours was sufficient time to permit the new attorney to step in and handle the remainder of the trial.
Given the facts of this particular case, we believe not. See Thompson, 439 So.2d at 1013; see also SSJ, 756 So.2d at 179; Quinton v. Horvath, 690 So.2d 755 (Fla. 3d DCA 1997). We therefore find the trial court’s denial of a continuance under these circumstances to constitute an abuse of discretion and we reverse the case for a new trial on MNB’s claim for real estate commissions and for a determination of damages for the diverted fill and settlement fees.
We find no error in the other issues raised in either the appeal or cross-appeal.
REVERSED and REMANDED for a new trial in accordance with the findings herein.
POLEN and MAY, JJ., concur.